CASE 10.—PROCEEDINGS    BY    THE    COMMONWEALTH
          THROUGH   THE   AUDITOR'S   AGENT  AGAINST
          MAX  SOLLIGER  TO  RECOVER  TAXES  UPON
          WHISKY STORED IN WAREHOUSE IN GERMANY.
          —February 16.

# Commonwealth v. Solliger

Appeal from Jefferson Circuit Court.

(First  Chancery  Branch)  SHACKELFORD  MILLER,
Judge.

Judgment for defendant, plaintiff appeals.  Reversed.

1.  Commerce—Duties of Exports—Taxation of Merchandise.—A
    tax levied upon exported property which operates indirectly
    as the laying of a duty upon the export is as much within
    the inhibition of Const. U. S. Art. 1, Sec. 10, providing that
    no State shall, without the consent of Congress, lay any im-
    posts or duties on exports or imports, as the laying of a duty
    directly.

2.  Same.—Const. U. S. Art. 1, Sec. 10, provides that no State
    shall, without consent of Congress, lay any imposts or duties
    on imports or exports. Ky. Stats., 1903, Sec. 4020, provides
    that all real and personal estate within this State, and all
    personal estate of persons residing in this State, shall be
    taxed. A general tax was laid by the State upon all property
    alike, and it was sought to tax whisky exported to a foreign
    country, on the ground that the exportation was colorable
    only, and to escape taxation, as it was intended to reimport
    it; or, if the situs of the whisky was in the foreign country,

Commonwealth v. Solliger.

then to tax the warehouse receipts representing it which were owned in this State. Held, that the proposed tax was not an attempt to lay a duty on the whisky, because it was exported, within the meaning of the Const. U. S. Art. 1, Sec. 10.

3.  Taxation—Liability of Persons and Property—Situs of Property.—Although Ky. Stats., 1903, Sec. 4020, provides that all real and personal estate within this State and all personal estate of persons residing in this State shall be subject to taxation, it does not include personal estate owned by persons residing in this State, but which is tangible and permanently located in other States, and employed there in the prosecution of their owner's business.

4.  Same—Motive of Exporter.—The motive of an exporter of property to a foreign country cannot be safely inquired into for the purpose of determining whether the exportation was in good faith, or made simply to escape the payment of taxes, and this State neither has nor should attempt to exercise further jurisdiction for any purpose over exported property.

5.  Same—Nature of Property—Warehouse Receipt.—Warehouse receipts, wherever issued, and whatever they may represent, are intangible personal property, whose situs for purposes of taxation is the domicile of their owner; hence a warehouse receipt owned by a person domiciled in this State for whisky exported to a foreign country may and should be taxed here, and at such value as it may have had on the day fixed by the statute for listing property.

M. J. HOLT for appellant.

BEN F. WASHER of counsel.

CONCLUSIONS OF LAW AND AUTHORITIES CITED.

1.  Unless exempted by Art. 1, Sec. 10, Subsec. 2, of the Federal Constitution appellee's whisky should be assessed as omitted property for taxation, because he is a resident of Kentucky, "and all personal estate of persons residing in this State, whether the property be in or out of this State," shall be assessed at its fair cash value: State Const., Sec. 172; Ky. Stats., 4020-4022-4052; Commonwealth v. Union Ref. Tr. Co., 26 Ky. Law Rep., 23; Johnson, Sheriff, v. Bradley, etc., 27 Ky. Law Rep., 541.

2.  If this 8,000 barrels of whisky was exported temporarily; or not for use; that is, to await a better market, or to evade for the time being, the revenue tax of 90c per gallon, the situs of same

for the purpose of taxation is in Kentucky the place of residence of the owner. In order to come within the exception of exemption of the Union Refrigerator Transit Company case, it must be permanently located in another State and in use in that State: Board v. Fidelity Trust, etc., 111 Ky. 667; Union Refrigerator Tr. Co. case, 199 U. S., 194.

3. If the whisky by reason of the provision of the Federal Constitution is exempt as an export from a State ad valorem tax, then the warehouse receipts as the intangible property of appellee are subject to assessment as omitted property. Warehouse receipts, by common and civil law and by express statutory provisions (Ky. Stats., Sec. 4770) are negotiable and transferable; Const. sec. 172., Ky. Stats., sec. 4020; First National Bank v. Boyce, 78 Ky., 42; Newcomb, Buchanan & Co. v. Cabbell, 10 Bush., 468, 469; Farney v. Ethridge, 24 Ky. Law Rep., 653; Greenbaum Bros. v. Meggiber, 10 Bush., 420; Cochran, etc., v. Ripey, 13 Bush., 505; Commonwealth v. Union Ref. Tr. Co., 26 Ky. Law Rep.; Board of Council, etc., v. Fidelity Trust Co., 111 Ky., 667.

4. The provisions of the Federal Constitution, Art. 1, Sec. 10, Subsec. 2, "that no State shall lay any impost or duties on imports or exports" does not apply to the levy of an ad valorem tax on this whisky as the property of appellee, because:

a. This is not an impost or duty.

b. This whisky has lost the character of an export. It is at its destination. The original shipment is broken. Two-thirds of it has been sold. The consignor and the consignee are one and the same, and the residue is on the market and for sale: May v. New Orleans (import case), 178 U. S., 501 to 509; Turpin v. Burgess (export case), 117 U. S., 506 to 507; American Steel Co. v. Speed, 114 U. S., 519 to 520.

5. This is not a tax imposed by Kentucky upon the whisky as a foreign product, nor a tax by reason of the whisky being exported, nor a tax while it is in a state of transit to some other place of destination. It is sought to be imposed upon the whisky after its exportation, after its arrival at its destination and it has become a commodity in the market at its place of destination. It therefore enjoys no discriminating favors, other than all tangible property of residents of this State situated beyond the limits of this State: 114 U. S., 623-633; 178 U. S., 508, 509; 117 U. S., 506, 507.

The exporter of goods does not escape taxation on such goods where he retains the ownership after they have reached their destination and he places same upon the market for sale: Turpin v. Burgess, 117 U. S., 504.

DODD & DODD for appellee.

The conceded facts in this case raise the following two legal questions, to-wit:

1.   Whether or not whisky exported in bond from Kentucky to foreign countries under the Federal regulations renouncing the governmental tax thereon ceases from the dates of such exportation to be further liable for any subordinate geographical taxation thereon so long as the same remains as such export. That is, to say, whether or not the situs of the said whisky as tangible personal property is liable for taxation at the domicil of the owner thereof regardless of its actual foreign situs?

2. · Whether or not the Federal constitutional provisions contained in Sec. 10, Art. 1, of the Federal Constitution, reading as follows:

"No State shall, without the consent of the Congress, lay any imposts or duties on imports or exports except what may be absolutely necessary for executing its inspection laws," is not a positive prohibition against the taxation of any such exported articles so long as their situs remains foreign to the territorial boundary of the United States.

### AUTHORITIES CITED.

Union Refrigerator Transit Co. v. Commonwealth of Kentucky, 199 U. S., 194; 26 Ky. Law Rep., 23; Delaware, etc., R. R. Co. v. Pennsylvania, 198 U. S., 341; City of Louisville v. Louisville Pub. Warehouse Co., 107 Ky., 185; Commonwealth v. Ayer & Tie Co., 25 Ky. Law Rep., 1068; Low v. Austin, 13 Wall., 32; American Steel Co. v. Speed, 192 U. S., 519; Brown v. Houston, 114 U. S., 628; May v. New Orleans, 178 U. S., 496; Austin v. Tennessee, 179 U. S., 343; Amy v. California, 24 How. 169; Clark y. Clark 3 Woods, 411; Fairbanks v. U. S., 181 U. S., 283; Pittsburg Coal Co v. Bates, 156 U. S., 587; Norfolk, etc., R. R. Co. v. Sims, 191 U. S 449; Pitkin v. Brooks, 193 Ill., 269.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR.— Reversing.

Appellee, Max Solliger, was the owner of a large quantity of whisky in bond for more than five years before the institution of this proceeding in the Jeffer-

son county court to require him to list the whisky, or the warehouse receipts evidencing it, for taxation, as omitted property. Solliger had owned the whisky for a number of years. It had not been removed from the distillery bonded warehouse in Kentucky, where it was stored under the provisions of the revenue laws and regulations of the United States, until the internal revenue tax on it had been paid. Just before the expiration of the period when, under the statutes of the United States, it was required that the internal revenue tax upon it be paid, and the whisky removed, appellee, Solliger, owner of say 8,000 barrels of the whisky, removed it for export. Under the provisions of the United States statutes, that was allowed; the federal government in that event renouncing its taxes against it. All State taxes were paid on it up to that time. The whisky was exported to Hamburg and Bremen in Germany, where it was stored in public warehouses, in the name and for the benefit of the consignor. The warehousemen issued warehouse receipts therefor to the consignor, who was also the consignee. Appellee, Solliger, had the possession and the title to these receipts until they were sold, which was within the period for which they are sought to be taxed, some of the whisky represented by them having been reshipped—probably a third or more of it to the United States, and some to Kentucky.

The contentions of the auditor's agent in this proceeding to tax the property are: (1) That the exportation of the whisky was done in order to escape the payment of taxes upon it, and, as it was then intended to reimport it to the United States and to Kentucky, the character of the title and possession of the owner was never changed, and it was conse-

quently subject to taxation in Louisville, Kentucky, the domicile of its owner. (2) That if the situs of the whisky be deemed to have been fixed in Germany by reason of the exportation, the warehouse receipts were nevertheless property, which, being in Kentucky where the owner resided, were taxable here. Appellee's contention is that neither the whisky nor the warehouse receipts were taxable in Kentucky, because under section 10, article 1, Const. U. S., providing, "No State shall, without consent of the Congress, lay any imposts or duties on imports or exports except what may be absolutely necessary for executing its inspection laws," it was not within the power of the State to levy a tax upon property which had been or was being exported. Whether the inhibition of the federal Constitution be against the levying of a tax, by way of impost or duty, upon the act alone of exporting property, we do not deem it necessary to decide in this case. It may be safely conceded that to levy a tax upon exported property, which should operate indirectly· as the laying of a duty upon the export, is as pernicious as to lay it directly. We do not find the slightest evidence of a purpose on the part of the State to lay a duty on the whisky because it was exported, by imposing the tax in question. On the contrary, the tax is levied upon all personal property owned by citizens of this State, where situated (if subject at all to the taxing jurisdiction of the State), upon the sole theory that its situs for purposes of taxation is the domicile of the owner, and, as the owner resides here, and has the benefit of the protection of the laws and government of this State over his person, he should, in proportion to the wealth which attends his person, bear his share of the expense of the State government.

Although the taxing statutes of this State provide (section 4020, Ky. St. 1903): "All real and personal estate within this State, and all personal estate of persons residing in this State, * * * shall be subject to taxation unless the same be exempt from taxation by the Constitution"—it must be construed not to mean personal estate owned by persons residing in this State, but which is tangible and permanently located in other States, and employed there in the prosecution of the owner's business. Such property, not enjoying any benefit or protection from the laws of this State, but deriving such benefit wholly from the laws of the State where situated, for which it is presumably taxed there, is not deemed within the taxing jurisdiction of this State. Union Refrigerator Tr. Co. v. Kentucky (U. S.) 26 Sup. Ct. 36, 50 L. Ed. 150. We do not apprehend that the motive of the exporter could ever safely be inquired into. For, if a State could say to such, "We find the fact to be that you are not exporting in good faith for sale, or permanent location of your property abroad, therefore we will tax it, notwithstanding it is export merchandise," in that way the State could vexatiously interfere with a subject over which Congress has been ceded the entire control. It is safer to treat the property exported as being thereafter within the jurisdiction of the government within whose territory it may be lodged. The whisky in the case at bar having been stored in a warehouse in Germany, where it became a part of the mass of property within the German Empire, doubtless owed a duty to pay taxes to the support of that government while there. The State of Kentucky neither had nor should attempt to exercise further jurisdiction over it for any purpose.

Commonwealth v. Solliger.

The warehousemen in Germany who issued warehouse receipts for the whisky created a distinct property in the receipts. While in a sense they represented the whisky, being its symbol for certain purposes, it could scarcely be maintained, for it is not true, that they stand in lieu of the whisky for all commercial purposes. Like all symbols, they are fictions; so are promissory notes, and bonds. Each is a representative or evidence of something else. Everywhere each has an individual value, derivative, it is true, from the thing upon which it is rested, yet is deemed distinct property. A bond is an evidence of the promise of its maker to pay its face at a time ascertainable. Its original commercial value depends upon the value of the security supporting it, whether it be the solvency of its maker, his credit, or the hypothecation of collateral to insure its being redeemed. Its indorser may add to its original value as property by his solvency, and so forth. Yet, as so much paper, it is valueless whether for taxation or trade. It may rest for the security of its redemption upon real estate, or for that matter whisky, mortgaged, while it derives its value as a commercial asset in part, or maybe in whole from the mortgaged property, securing it, it is always and everywhere deemed property of the value which it may have in the market, and may be taxed although the property mortgaged to redeem it is beyond the taxing district, and may also be taxed where it is situated.

A warehouse receipt partakes of some of the same features. Its original value may depend entirely on the value of the chattel it represents, and which is deemed to be in pledge to redeem it. But such receipts are generally negotiable, as bonds and bills of exchange are. Each indorser may add materially to

their value. They float upon the markets of the world as property, as surely as bonds are property. Whoever owns them, owns that much of assets having such value as the market affords to them, which may be sold, hypothecated, attached for debt, and are the subject of inheritance. Like other choses in action, their situs is that of their owner. His security and comfort given to him by government enable him to hold and enjoy them. Nor is it true that, as they are issued upon his whisky, they are in effect evidence merely of his title, as his deeds to his lands in a foreign state may be. Title deeds in this country are not such property as that they have an independent value, or a market value. The warehouseman who stores whisky becomes its bailee. He has a special property in it. He who lodged it there, exchanges it to the warehouseman for the latter's negotiable receipts, commercial paper, promises to redeem, and, independent of the receipts, the former owner no longer has the property in the whisky, any more than the mortgagee has the property in the mortgaged chattel. We are of opinion, and without hesitation hold, that warehouse receipts, wherever issued, and whatever they may represent, are intangible personal property, whose situs for purposes of taxation is the domicile of their owner. They may be and should be taxed at his domicile at such value as they may have had on the day fixed by the statute for listing property generally for taxation.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent herewith.